Case 2:07-cv-01936-JFG   Document 10   Filed 05/27/08   Page 1 of 7

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| Anderson C. Watts, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 07-G-1936-S |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

The plaintiff, Anderson C. Watts, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations

omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

  (1) whether the claimant is currently employed;

  (2) whether she has a severe impairment;

  (3) whether her impairment meets or equals one listed by the Secretary;

  (4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant case, the ALJ, Jerome L. Munford, determined the plaintiff met the first two tests, but concluded  did not suffer from a listed impairment.  The ALJ found the plaintiff unable to perform his past relevant work.  Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do."  Foote, at 1559.  When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids).  Foote, at 1558-59.  The presence of a non-exertional impairments (such as pain, fatigue or mental illness) also prevents exclusive reliance on the grids.  Foote, at 1559.  In such cases "the [Commissioner] must seek expert vocational testimony.  Foote, at 1559.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically

3

asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers within the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).

## DISCUSSION

In the present case the plaintiff alleges he is disabled due to mental illness. The ALJ found the "claimant experiences no more than mild to moderate restrictions of activities of daily living and in maintaining concentration, persistence or pace. <u>He has a marked restriction in maintaining social functioning</u>. He has no episodes of

decompensation." [R 30 (emphasis added).] The ALJ based this finding on the report of the Commissioner's consulting psychiatrist, Dr. Huggins, who assessed the plaintiff as having a marked limitation in his ability to maintain social functioning. [R 262] Dr. Huggins diagnosed the plaintiff as suffering from: "Post Traumatic Stress Disorder (Claimant's depression, impairments in concentration, panic attacks and anger are all manifestations of this disorder)." R 260. Dr. Huggins also assessed the plaintiff's GAF as 50.[1] Dr. Huggins included the following explanation of his GAF assessment: "Claimant exhibits impairments in social, occupational, and interpersonal functioning. He continues to have impairment in concentration, intrusive thoughts, panic attacks, anger and depression." [R 260]

The Commissioner's regulations define social functioning as follows:

> *Social functioning* refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. You may demonstrate impaired social functioning by, for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation. You may exhibit strength in social functioning by such things as your ability to initiate social contacts with others, communicate clearly with others, or interact and actively participate in group activities. We also need to consider cooperative behaviors, consideration for others, awareness of others' feelings, and social maturity. Social functioning in work situations may involve interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers.

---

[1] A GAF of 41-50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM-IV at 32 (emphasis in original).

> We do not define "marked" by a specific number of different behaviors in which social functioning is impaired, but by the nature and overall degree of interference with function. For example, if you are highly antagonistic, uncooperative, or hostile but are tolerated by local storekeepers, we may nevertheless find that you have a marked limitation in social functioning because that behavior is not acceptable in other social contexts.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (C)(2) (emphasis added). A "marked" impairment in social functioning would, therefore, have a vocational impact on the plaintiff's ability to do work related activities.

Even though the ALJ made the explicit finding of a marked impairment in social functioning, he did not include that limitation in his hypothetical questioning of the vocational expert. [R 65-71] Therefore, the vocational expert's testimony upon which the ALJ relied to find the plaintiff could do other work was not based upon substantial evidence. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."). Accordingly, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work and the plaintiff is disabled within the meaning of the Social Security Act.

The failure to include the plaintiff's marked impairment in social functioning alone requires reversal. However, the court also notes the ALJ refused to accept Dr. Huggins's GAF assessment of 50. [R 30]. The GAF score was supported by an explanatory narrative comment from Dr. Huggins explaining his reason for assigning

the score, which lends it greater credibility. Dr. Huggins's explanation included an impairment in occupational functioning. [R 260] Moreover, the vocational expert testified at the hearing that it is "generally thought that if a person was psychologically impaired to the point that [their GAF] was at 50 or below, they would be too psychologically impaired to function successfully in competitive employment." [R 71] Because the ALJ found Dr. Huggins's assessment was entitled to "significant weight," his selective refusal to accept Dr. Huggins's GAF assessment is troubling. Had he accepted the GAF assessment, the vocational expert's testimony would have supported plaintiff's claim of disability.

An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 27 May 2008.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.